LEE J. SANDRIDGE *et al. v.* ETTIE WAMSLEY *et al.*

(No. 7218)

Submitted October 18, 1932.   Decided October 25, 1932.

*Joseph J. Madden* and *C. S. Kump,* for appellant.

*D. H. Hill Arnold,* and *A. D. Dudit,* for appellee Virginian Joint Stock Land Bank of Charleston.

HATCHER, PRESIDENT:

This appeal involves the application of a vendor's lien.

In 1919, J. K. Wamsley gave a deed of trust on a tract of 179 acres to secure the payment of a note of $5,000 executed by him to the Virginian Joint Stock Land Bank (hereinafter called the Bank). The following year J. K. and his mother, M. Hart Wamsley, executed a joint deed conveying to Lee J. and Ettie Wamsley, the 179 acres and a tract of 100 acres which the deed recited was owned separately by Mrs. Wamsley. The consideration stated was $16,500, of which the deed acknowledged the payment of $3,000 in cash and then proceeded as follows: ''And the parties of the second part hereby assume and agree to pay off as a part of such purchase money the sum of $4,862.00 due the Virginian Joint Stock Land Bank, upon a loan of $5,000.00 to said J. K. Wamsley, secured by a deed of trust upon the portion of said farm owned by the said J. K. Wamsley and the residue—$8,637.94 shall be paid in eight annual installments of $1,000.00 each and one installment of $637.94, with interest at the rate of six per centum per annum payable semi-annually as evidenced by * * * (nine notes, description omitted), and to secure the payment whereof a vendor's lien is hereby retained upon the property herein conveyed.''

Concurrent with that deed, the Bank accepted a written assumption of J. K.'s note by Lee J. and Ettie. The assumption referred to the deed of trust, stated Lee J. and Ettie had purchased the 179 acres, and that it should be attached to the original note and have the same effect as an endorsement. The instrument made no reference to the vendor's lien. Lee J. and Ettie granted the two tracts to Globe Realty Company in 1923. Shortly afterward, the Realty Company executed to the Bank a like assumption of the J. K. note. Some payments were made on that note as well as on the nine purchase notes (given by Lee J. and Ettie). One of those notes was

assigned to plaintiffs, Sandridge and Cunningham, and one to plaintiff Jones. Suits were brought against the land to enforce collection of the two assigned notes in which the Bank and Mrs. Wamsley, as the owner of the unpaid balance on the other seven notes, severally joined. Details of the litigation are unnecessary. The Sandridge and Cunningham note was paid by the Realty Company, and the two tracts were sold to satisfy the other notes. By virtue of the trust deed, the Bank's claim against the 179 acres was given priority. The price realized from that tract was not sufficient to satisfy the balance due the Bank. The price brought by the 100 acres, after payment of taxes, etc., did not satisfy the notes of Miss Jones and Mrs. Wamsley. The lower court held that the vendor's lien reserved in the deed to Lee J. and Ettie was intended to secure J. K.'s note to the Bank as well as the other unpaid purchase money (the nine notes) and accorded to the balance due the Bank, after sale of the 179 acres, equal priority in the proceeds of the 100 acres with the sums due Miss Jones and Mrs. Wamsley, respectively.

A vendor's lien usually relates to all unpaid purchase money. But it is a settled rule of construction that where a deed is reasonably susceptible of more than one meaning, as in this instance, it should be read in the light of the circumstances under which it was executed and that general terms may be restricted thereby. *White* v. *Bailey*, 65 W. Va. 573, 64 S. E. 1019; 6 R. C. L. 849, 850. The deed in question treated the debt due the Bank (assumed by the grantees as part of the purchase price) as "secured" by a lien on the 179 acres. Ordinarily a party, whose assumption of a debt is recognized by the creditor, becomes the principal debtor, and he whose debt is assumed is treated as a surety. See *Trotter* v. *Hughes*, 62 Am. Dec. 137 (note on 142). But the contemporaneous written assumption of the debt to the Bank made no reference to the vendor's lien, referred only to the deed of trust as the security for the debt, *and limited the effect of the assumption to an endorsement by the grantees of the note held by the Bank.* This would seem to indicate that the Bank then did not recognize any change in the situation

which it had theretofore established with J. K. There was no reason from its standpoint for a change. No consideration or inducement of any kind was shown to have passed from it to Mrs. Wamsley or to any one else for extending its lien to the 100 acres. We are therefore of opinion that the vendor's lien was not intended to increase the security of the Bank, but was meant to apply strictly to the nine notes.

In her answer, filed in the Sandridge and Cunningham suit, Mrs. Wamsley took the position that the vendor's lien applied to the entire 279 acres. In a later pleading, she averred that it was her intention to reserve a lien on the 100 acres to secure payment of the deferred purchase money. The brief of the Bank contends that she has taken inconsistent positions. Without admitting that she has, suppose we treat the contention as well founded; then we simply would disregard her later averment of intention. Her first position is undoubtedly correct—the vendor's lien extended to both tracts, subject of course to the prior lien (the deed of trust) on the 179 acres, in favor of the Bank.

The decree of the lower court is reversed and the cause remanded.                     *Reversed and remanded.*